UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. File No. 05-126 (MJD/JGL) |
| Plaintiff, | |
| v. | MEMORANDUM OF LAW & ORDER |
| THOMAS VIRGIL GLARNER (1), and DARREL NEWTON BARNARD (2), | |
| Defendants. | |

---

Chris Wilton, Assistant United States Attorney, for and on behalf of Plaintiff United States of America.

Gary R. Bryant-Wolf, Bryant-Wolf Law Office, for and on behalf of Defendant Thomas Virgil Glarner.

Kassius Benson, Law Office of Kassius O. Benson, P.A., for and on behalf of Defendant Darrel Newton Barnard.

_____

The above-entitled matter comes before the Court upon Defendant Glarner's objections to the July 7, 2005 Report and Recommendation of Chief United States Magistrate Judge Jonathan Lebedoff.

I. INTRODUCTION

Pursuant to statute, the Court has conducted a <u>de novo</u> review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.1(c). Based on this Court's review of

1

the record, and for the reasons articulated herein, the Court adopts the Report and Recommendation dated July 7, 2005.

## II.   DISCUSSION

Defendant Barnard does not object to Judge Lebedoff's recommendation that his motions to suppress evidence and statements be denied. Therefore, the Court adopts these portions of the Report and Recommendation ("R & R") without further discussion. Defendant Glarner, however, objects to Judge Lebedoff's recommendation that his Motion to Suppress be denied. Specifically, Glarner asserts that the search warrant authorizing a search of his home was issued without probable cause, and that the officers who executed the search warrant failed to properly "knock and announce" their authority and purpose prior to entering his home.

### A.   **Whether the Search Warrant Was Issued Upon Probable Cause**

A search warrant must only be issued upon probable cause. U.S. Const. amend. IV. Probable cause to issue a search warrant exists when an affidavit sets forth information to justify a prudent person in the belief that contraband will be found in a particular place. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Whether probable cause exists is based on a "practical, common-sense" evaluation of the totality of the circumstances. Id.  The issuing judge needs only a substantial basis to believe that probable cause exists. See id. at 238-239 (citation omitted);

United States v. Ellison, 793 F.2d 942, 946 (8th Cir. 1986).  The issuing judge's determination of probable cause should be given considerable deference.  Gates, 462 U.S. at 236 (citation omitted); Ellison, 793 F.2d at 946 (citation omitted).

Glarner argues, without citing any specific deficiency, that the search warrant authorizing a search of his home was not supported by probable cause because the affidavit in support of the application contained "general, vague, and stale averments." (Def. Glarner Br. Supp. Obj. R & R at 5.) The Court finds this argument without merit.

Officer Plankers' affidavit in support of the warrant application states that Plankers, a Coon Rapids police officer and member of the Anoka/Hennepin Drug Task Force, was involved in an ongoing investigation of Defendant Glarner, and that a confidential informant ("CI") who was known to Plankers informed Plankers that Glarner was selling methamphetamine ("meth") from his home in Lino Lakes. (Ex. 1 at 0000120 ¶ 1.) Plankers confirmed the address and discovered that Glarner had been arrested for controlled substance crimes in December 2004 and March 2005. (Id. ¶ 2.) In addition, Plankers stated that within the previous seventy-two hours, the CI conducted an audio taped controlled meth buy from Glarner at Glarner's home. (Id. ¶¶ 3-4.)

The Court finds that this information provided a substantial basis to justify the issuing judge to conclude that contraband would be found in Glarner's home.

Thus, the warrant was supported by probable cause, and Glarner's motion is denied on this basis.

### B. Whether Officers Properly "Knocked and Announced" Before Entering

The constitutionality of a search method is judged by the "general touchstone of reasonableness which governs Fourth Amendment analysis." United States v. Ramirez, 523 U.S. 65, 71 (1998). An entry satisfies the standard if, after announcing their presence, officers forcibly enter once a reasonable expectation of exigency has ripened. United States v. Banks, 540 U.S. 31, 40 (2003). The burden to establish a reasonable suspicion of exigency "is not high." Doran v. Eckold, 409 F.3d 958, 963 (8th Cir. 2005)(quoting Richards v. Wisconsin, 520 U.S. 385, 394(1997)). Reasonableness is judged from the point of view of a reasonable officer in the same situation, taking into account the totality of the circumstances. Banks, 540 U.S. at 39. The risk of disposal of narcotics is a valid factor to consider when judging reasonableness. Id. at 40. "[W]hen circumstances are exigent because a pusher may be near the point of putting his drugs beyond reach, it is imminent disposal, not travel time to the entrance, that governs when the police may reasonably enter." Id. Thus, once the reasonable exigency of suspicion has ripened, officers need not wait before entering. Id.; United States v. Vesey, 338 F.3d 913, 916 (8th Cir. 2003)(ten seconds between announcement and forced

entry reasonable when destruction of drugs was a possibility); United States v. Goodson, 165 F.3d 610, 614 (8th Cir. 1998)(twenty seconds between announcement and entry reasonable when drugs and weapons were likely present in the house). See also Richards, 520 U.S. at 395-56 (no-knock entry reasonable based on exigency even though magistrate who signed the warrant denied request for no-knock warrant).

At approximately 5:40 p.m. on March 23, 2005, the search warrant was executed at Glarner's home. Both Officer Plankers and Glarner testified at the suppression hearing regarding the execution of the warrant. The two men provided conflicting testimony regarding whether the team executing the search warrant properly knocked and announced its presence prior to entering the house. Judge Lebedoff concluded that Plankers' version of events was more credible, and therefore, concluded that the search was constitutional. The Court has conducted a de novo review of the testimony at the suppression hearing, and also finds Plankers' testimony more credible than Glarner's testimony.

Plankers, a police officer with thirteen years experience, testified that he was the third or fourth person in line during the entry into the house, and that the first officer in line knocked on the door and loudly announced,"[P]olice, search warrant," and then continued to knock and announce. (Tr. June 15, 2005 Pretrial Mot. Hr'g at 30-31.) After ten to fifteen seconds, Officer Plankers saw a

5

man look down to the front door from the upper level of the split-entry house, and then walk away. (Id. at 31.) The man was later identified as Defendant Barnard. (Id. at 32.) Once Barnard saw the team, Plankers felt the officers were "compromised," and the potential existed for Barnard to get a weapon or dispose of evidence, so Plankers told the team to "make the entry, open the door." (Id. at 32-33.) The door was unlocked, and the officers opened the door and entered the house. (Id.) Officer Plankers testified that he did not include information related to the knock and announce in his police report documenting the search because he only includes information related to entry when the entry is unannounced or when the team uses a ram to achieve entry. (Id. at 46-47.) Plankers further testified that it is Anoka County policy to wait fifteen to twenty seconds after announcing before entering a building. (Id. at 46.)

Glarner testified that his home is fairly small, so he would have heard someone knocking on the door from the bedroom he was in at the time Plankers and his team entered his home, and that he heard nothing. (Id. at 65.) However, Glarner also admitted that he had smoked about a quarter gram of meth that morning, which was "a lot" for Glarner. (Id. at 72.) In addition, Glarner smoked about the same amount of meth the previous morning, and could not remember if he had smoked on the day prior to that because his memory was "not that great" for the three days prior to the search. (Id. at 73.) Furthermore, although Glarner

6

testified that smoking meth "increases [his] hearing ability," "heightens [his] awareness of things," and puts him on edge, he also testified that meth makes him put things off, "seems to . . . slow things down a bit," and makes him "not all that concerned with things." (Id. at 72, 77.) In addition, Glarner admitted that meth stays in a person's system for days, and that he was under the influence of meth on March 23. (Id. at 71-72.) However, Glarner then testified that the effects of meth had worn off by the time the officers searched his home. (Id. at 77.)

Glarner's conflicting testimony is less credible than Plankers' testimony. Plankers credibly testified as to why his report did not contain a recital of the knock and announce, a central issue in Glarner's objections to the R & R. (Def. Glarner's Br. Supp. Obj. R & R at 2-5, 7-9.) In addition, Plankers' testimony was consistent throughout the hearing, while Glarner contradicted himself during the suppression hearing. Lastly, although Glarner takes issue with Judge Lebedoff's characterization of meth as a "hallucinogenic" rather than a "stimulant" (Def. Glarner's Br. Supp. Obj. R & R at 6), the Court does not find this error significant. The fact remains that Glarner smoked meth on the morning of March 23, and admitted at the suppression hearing that meth affects people for days after they use the drug. The fact that Glarner later testified that the effects had worn off by the time of the search is unavailing. Glarner's inconsistent testimony makes all his statements suspect.

Thus, the Court finds Officer Plankers' testimony more credible than Glarner's testimony. Officers did knock and announce their presence on March 23, 2005. Moreover, to the extent that Glarner takes issue with the amount of time between the officers' knocking and entering the home, the Court finds any shortened time prior to entry reasonable. Once the officers knew that Barnard had seen them, and that Barnard was not answering the door, the officers were justified in believing that the inhabitants of the house were either gathering weapons or destroying evidence. This is especially true in this situation since Plankers not only made the decision to enter, but had also sworn out the affidavit in support of the search warrant that was being executed, and thus knew there was a probability that controlled substances would be found in the house. (Id. at 0000119.)

Furthermore, even assuming *arguendo* that officers did not knock and announce, being seen by Barnard gave officers reason to believe their entry was compromised and that occupants of the home might be gathering weapons or destroying evidence. Thus, even without knocking and announcing, the entry into Glarner's home passed constitutional muster because the officers reasonably thought that evidence could be destroyed. See Richards, 520 U.S. at 395-96 (finding no knock entry justified based on exigency even though magistrate refused to issue no knock search warrant). Officers were justified in entering the

home when they did, and thus the entry and search were constitutional. Glarner's motion is denied on this basis, also.

Accordingly, based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Chief Magistrate Judge Lebedoff's July 7, 2005 Report and Recommendation is adopted;

(2) Defendant Barnard's Motion to Suppress Tangible Evidence and Statements [Doc. No. 25] and Motion to Suppress [Doc. No. 36] are **DENIED IN PART** as to tangible evidence, and **DENIED AS MOOT IN PART** as to statements of Defendant;

(3) Defendant Glarner's Motion to Suppress Evidence [Doc. No. 37] is **DENIED**; and

(4) Defendant Barnard's Second Motion to Suppress Evidence [Doc. No. 40] is **DENIED**.

Dated: August 10, 2005         s/ Michael J. Davis
                               Michael J. Davis
                               United States District Court